UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOHN DOE

Plaintiff(s)

v.

WILLIAMSON COUNTY

Defendant(s)

Civil Action

No. A17CV0812 RP

Judge:

Magistrate:

# COMPLAINT

The United States Congress has found that physical or mental *disabilities in no way diminish a person's right to fully participate in all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.[1] Historically, United States society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.[2] Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to

---

[1] 42 U.S.C. § 12101(a)(1).
[2] 42 U.S.C. § 12101(a)(2).

Complaint

lesser services, programs, activities, benefits, jobs, or other opportunities.[3] Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services.[4] Unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination.[5] Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in the United States, and are severely disadvantaged socially, vocationally, economically, and educationally.[6] This continuing existence of unfair and unnecessary discrimination and prejudice costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.[7]

Consequently, the 101st United States Congress, with the support of President George H. W. Bush,[8] determined that the United States' proper goals are to *assure equality of opportunity, full participation, independent living,* and *economic self-sufficiency* for individuals with disabilities.[9] In accordance with these goals, and with

---

[3] 42 U.S.C. § 12101(a)(5).
[4] 42 U.S.C. § 12101(a)(3).
[5] 42 U.S.C. § 12101(a)(4). Compare to the unambiguous text of the Fourteenth Amendment: "[No State shall] … deny to any person … the equal protection of the laws". U.S. Const. amend. XIV, § 1, cl. 4.
[6] 42 U.S.C. § 12101(a)(6).
[7] 42 U.S.C. § 12101(a)(8).
[8] https://www.eeoc.gov/eeoc/history/35th/videos/ada_signing_text.html
   https://www.c-span.org/video/?13297-1/americans-disabilities-act-signing&start=299#
[9] 42 U.S.C. § 12101(a)(7).

overwhelming congressional support,[10] the Americans with Disabilities Act of 1990 was signed into law on July 26, 1990. The purpose of this landmark legislative enforcement of the United States Constitution is: [11]

(1) to provide a clear and *comprehensive national mandate for the elimination of discrimination against individuals with disabilities*;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the United States government plays a central role in enforcing the standards established in this legislation on behalf of individuals with disabilities; and

(4) to invoke *the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce*, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

Applied to these proceeding, the Americans with Disabilities Act of 1990 specifically mandates that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a State or local public entity, or be subjected to discrimination by any such entity.[12]

---

[10] The House voted 377-28 (93%); the Senate voted 91-6 (94%).
[11] 42 U.S.C. §§ 12101(b) et seq..
[12] 42 U.S.C. § 12132.

PLAINTIFF alleges:

## INTRODUCTION

1. John Doe ("Plaintiff") brings this action to enforce federal anti-discrimination law through declaratory, injunctive, and other appropriate relief against Williamson County, Texas ("Defendant"), under Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131–12134, and the U.S. Department of Justice's Title II implementing regulations, 28 C.F.R. pt. 35.

2. As necessary, other applicable state and federal laws may also be invoked.[13]

3. In violation of Title II of the ADA ("Title II") and its implementing regulations, the Williamson County court system discriminates against, segregates, and systematically excludes individuals with disabilities in the provision or operation of its public services, programs, or activities.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 42 U.S.C. § 12133. This Court may grant declaratory and other relief under 28 U.S.C. §§ 2201(a), 2202, and 42 U.S.C. §§ 12133, and 12205.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). All defendants reside within this judicial district; a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

---

[13] E.g.: (1) Tex. Const. art. I, § 3 (Equal Rights); (2) Tex. Const. art. I, § 27, cl. 2 (Right of Petition for Redress of Grievances); (3) 29 U.S.C. § 794 (nondiscrimination under federal grants and programs); (4) 42 U.S.C. § 1983 (civil action for deprivation of rights); (5) U.S. Const. amend. I, cl. 3 (Petition Clause); (6) U.S. Const. amend. XIV, § 1, cl. 3 (Due Process Clause); (7) U.S. Const. amend. XIV, § 1, cl. 2 (Privileges or Immunities Clause); and (8) U.S. Const. amend. XIV, § 1, cl. 4 (Equal Protection Clause).

# RIGHT TO A JURY TRIAL PRESERVED

6. The right of trial by jury as declared by the Seventh Amendment to the Constitution – or as provided by federal statute – is preserved inviolate.

# PARTIES

7. Plaintiff, **JOHN DOE**, is a Williamson County resident and "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104.

8. Defendant, **WILLIAMSON COUNTY**, Texas, including its agencies and instrumentalities, is a unit of local government and "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.[19]

9. Official capacity defendants employed by Williamson County (chronological):

    (1)   Unidentified Defendant 1

    (2)   Unnamed Defendant 1 (District Clerk's Office);

    (3)   Unidentified Defendant 2 (District Clerk's Office);

    (4)   Unidentified Defendant 3 (District Clerk's Office);

    (5)   Unnamed Defendant 2 (County Clerk's Office);

    (6)   Unidentified Defendant 4 (County Clerk's Office);

    (7)   Civil Attorney Ruhee Leonard ("Leonard");

    (8)   Chief Civil Attorney of Counsel Henry "Hank" Prejean ("Prejean");

---

[19] *See, e.g.*: *Galloway v. Super. Ct.*, 816 F. Supp. 12, 18 (D.C. Cir. 1993) (holding that a court system is a "public entity" under the ADA). *See also, e.g.*: *Tennessee v. Lane*, 541 U.S. 509, 533 (2004) (holding that Title II, as it applies to the class of cases implicating the *fundamental right of access to State and local courts*, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment) (emphasis added).

(9)   Unidentified Defendant 5 (County Attorney's Office); and

(10)  Unidentified Defendant 6.

# TITLE II OF THE ADA AND IMPLEMENTING REGULATIONS

10. Title II specifies that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity". 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). Or in other words, Title II "prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities". *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

11. The term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity". 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

12. The term "disability" is defined as:

(1) "a physical or mental impairment that substantially limits one or more major life activities", 42 U.S.C. § 12102(1)(A) and 28 C.F.R. § 35.108(a)(1)(i);

(2) "a record of such an impairment", 42 U.S.C. § 12102(1)(B) and 28 C.F.R. § 35.108(a)(1)(ii); or

(3) "being regarded as having such an impairment", 42 U.S.C. § 12102(1)(C) and 28 C.F.R. § 35.108(a)(1)(iii).

13. The term "physical or mental impairment" is defined as "[a]ny physiological disorder or condition, cosmetic disfigurement, … anatomical loss affecting one or more body systems", or "[a]ny mental or psychological disorder". 42 U.S.C. § 12205a, 28 C.F.R. §§ 35.108(b)(i), and 35.108(b)(ii).

14. The term "physical or mental impairment" "includes, but is not limited to, contagious and noncontagious diseases and conditions such as the following: orthopedic, visual, speech, and hearing impairments, and cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, emotional illness, dyslexia and other specific learning disabilities, Attention Deficit Hyperactivity Disorder, Human Immunodeficiency Virus infection (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism". 28 C.F.R. § 35.108(b)(2).

15. This definition of "disability" must be construed broadly in favor of expansive coverage to the maximum extent permitted by the ADA. 42 U.S.C. § 12102(4)(A); 28 C.F.R. §§ 35.101(b), and 35.108(a)(2)(i).

16. Title II and its implementing regulations make no relevant distinctions between disability subtypes. 42 U.S.C. § 12102(1)(A); 28 C.F.R. §§ 35.108(b) et seq..

17. In addition to general prohibitions against discrimination, relevant ADA implementing regulations mandate that:

(1) "[a] public entity shall make reasonable modifications in policies, practices, or procedures when [such] modifications are necessary to avoid

discrimination on the basis of disability, unless the public entity can demonstrate that making [those] modifications would fundamentally alter the nature of the service, program, or activity", 28 C.F.R. § 35.130(b)(7);

(2) "[e]xcept as otherwise provided in § 35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity", 28 C.F.R. § 35.149;

(3) "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others", 28 C.F.R. § 35.160(a)(1);

(4) "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity", 28 C.F.R. § 35.160(b)(1); and

(5) "[i]f an action required to comply with [28 C.F.R. §§ 35.160–35.164] would result in [fundamental alterations] or [undue financial or administrative burdens], a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity", 28 C.F.R. § 35.164.

18. Also under Title II implementing regulations, in providing any aid, benefit, or service, a public entity may not, on the basis of disability, directly or through arrangement: "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others", 28 C.F.R. § 35.130(b)(1)(iii); or "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the benefit or service", 28 C.F.R. § 35.130(b)(1)(vii).

19. Title II implementing regulations further require that "[a] public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the [ADA] or this part". 28 C.F.R. § 35.130(f).

## FACTUAL ALLEGATIONS
### GENERALLY

20. In addition to intentional exclusion and systematic deprivation of fundamental rights, the Williamson County court system segregates individuals with disabilities, and relegates them to inferior services, benefits, and opportunities.

21. Williamson County discriminates against specific disability subtypes by providing or refusing accommodations based on the disability subtype.

22. Plaintiff is a member of a discrete disabled subclass traditionally subjected to systematic discrimination and exclusion by the Williamson County court system.

23. For years Plaintiff has required, among other things, equal access to, or an equal opportunity to participate in and benefit from, the services, programs, and activities of the Williamson County court system.

24. During that time, Plaintiff has made oral and written accommodation requests for, among other things, equal access to, or an equal opportunity to participate in and benefit from, the services, programs, and activities of the Williamson County court system.

25. In response to those requests, Williamson County has neither provided Plaintiff, nor attempted to provide Plaintiff, accommodations of any sort.

26. Plaintiff requires reasonable accommodations for, among other things, equal access to, or an equal opportunity to participate in and benefit from, the services, programs, and activities of the Williamson County court system.

27. Providing Plaintiff reasonable accommodations in accordance with Title II and its implementing regulations would neither impose undue financial or administrative burdens on Williamson County, nor would it fundamentally alter the nature of the services, programs, or activities of the Williamson County court system.

28. Contributing to the billions of dollars in unnecessary federal expenses cited in 42 U.S.C. § 12101(a)(8), Williamson County engages in unfair and unnecessary disability discrimination and prejudice that results in needless dependency and nonproductivity.

29. Qualified individuals with disabilities have been, and continue to be, harmed by the Williamson County court system which denies qualified individuals with disabilities the same opportunities, benefits, and participation as others.

## PLAINTIFF

30. Plaintiff is "disabled" within the meaning of 42 U.S.C. §§ 12102(1)(A), 12102(1)(B), 12102(1)(C), and respective Title II implementing regulations. The question of whether Plaintiff meets the definition of "disability" should not demand extensive analysis. Pub. L. 110-325, § 2(b)(5); 28 C.F.R. § 35.101(b).

31. Prior to sustaining disabling injury, Plaintiff was an industrious and intellectually gifted university student.

32. Absent disability, and to the extent that Williamson County's pro se obligations are realistic, Plaintiff would be able to competently perform the pro se tasks necessary of, for example, obtaining "due process" and the equal protection of state and federal laws under the Williamson County court system.

33. Plaintiff's disabilities preclude gainful employment.

34. Plaintiff's benefit rate, determined by Title XVI of the Social Security Act ("Title XVI"), is at 73% of (or 27% below) the Federal Poverty Level ("FPL"), and 42% of (or 68% below) a "living wage" model of poverty.[21]

35. Under state and federal law: Plaintiff cannot save more than approximately 2,000 USD without a loss of benefits far greater than 2,000 USD; and Plaintiff's benefits

---

[21] Amy K. Glasmeier's living wage model:
    http://livingwage.mit.edu/resources/Living-Wage-User-Guide-and-Technical-Notes-2016.pdf
    http://livingwage.mit.edu/counties/48491

decrease by an amount approximately proportional to money saved through ungainful employment or expense reduction (while at or below the FPL).

36. Plaintiff is unable to fulfill their basic needs by reason of disability.

37. Absent disability, Plaintiff would be able to make the purchases Williamson County requires of, for example, the opportunity to equally benefit from, and for full participation in, its public services (e.g. Williamson County's probate courts forbid participation in certain services without such purchases).

38. Plaintiff sustained disabling injury through *no fault of their own.*

39. *Absent disability, Plaintiff would require no assistance whatsoever.*

## DEFENDANT(S)

40. Williamson County is a political subdivision of the State of Texas that operates with an annual budget of approximately 302,538,378 USD, serving a population of approximately 545,412 residents, with of the order of 50,000, or more, of those being qualified individuals with disabilities.[23]

41. Williamson County provides, inter alia, the following public services: five district courts, four county courts at law, and four justice courts.

42. Williamson County, including its agencies and instrumentalities, is a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A), and is therefore subject to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12134, and Title II implementing regulations, 28 C.F.R. § 35.130.

---

[23] Extrapolation of US Census (national) datum for persons reporting disabilities as "severe".

43. Although "disabilities in no way diminish a person's right to fully participate in all aspects of society", 42 U.S.C. § 12101(a)(1), Williamson County implements discriminatory services, programs, or activities that fail to account for the effects of Title XVI (in conjunction with the ADA) on the provision or operation of its public services, programs, and activities.

44. Williamson County: has more than 50 employees; has failed to designate an ADA coordinator; does not provide notice about the ADA's requirements; and has not established grievance procedures. Williamson County is therefore noncompliant with 28 C.F.R. § 35.107.

45. All official capacity defendants, acting in their official capacity and on behalf of or in concert with Defendant Williamson County, were either deliberately indifferent to discrimination against Plaintiff, or knowingly and intentionally discriminated against Plaintiff.

46. Defendant Prejean: is an employee of Williamson County with substantial supervisory authority; knew Plaintiff was denied assistance; had sufficient authority to provide Plaintiff assistance; was deliberately indifferent to Williamson County's failure to provide Plaintiff assistance; and knowingly and intentionally discriminated against Plaintiff in concert with Williamson County.

## Plaintiff's Accommodation Requests and Defendant's Responses

47. On or before January 1, 2017, one or more times Plaintiff orally informed Williamson County courts of their inaccessibility, including but not limited to,

jury duty inaccessibility, and one or more times Plaintiff made one or more oral accommodation requests. No accommodations were provided.

    (1) On or before January 1, 2017, Plaintiff received a summons for jury duty in Williamson County. Williamson County was informed Plaintiff's disabilities prevented participation in jury duty without some form of accommodation. Williamson County responded by, upon information and belief, disqualifying Plaintiff from serving on juries in Williamson County.

48. On or before May 14, 2017, in response to inaccessible public services, Plaintiff made one or more oral accommodation requests. No accommodations were provided.

49. On or about May 15, 2017, Plaintiff mailed medical documentation and a sworn statement concisely describing specific causes of action to the Williamson County District Clerk. The submitted medical documentation contained statements from a licensed psychologist that notified Williamson County of discriminatory public services and provided accommodation recommendations. Those documents were, upon information and belief, lost or destroyed by the Williamson County District Clerk. No response or accommodations were provided.

50. On or about May 31, 2017, Plaintiff traveled from Austin to Georgetown and hand-delivered copies of these ¶ 49 documents to the Williamson County District Clerk, Williamson County Clerk, and civil division of the Williamson County Attorney's Office. No accommodations were provided

51. Also on or about May 31, 2017, while speaking with Defendants Leonard, Prejean, and Unidentified Defendant 5 of the Williamson County Attorney's Office, Plaintiff requested the following accommodations (not necessarily in this order):

    (1) *any accommodation at all*;

    (2) procedural modifications (e.g. to accept Plaintiff's defective petition);

    (3) assistance of a non-attorney;

    (4) legal advice; or

    (5) assistance of an attorney.

    Although no accommodations were provided at that time, Prejean agreed to provide a written response to Plaintiff's accommodation requests.

52. On or about July 5, 2017, Plaintiff received a typewritten response from Prejean on behalf of the Williamson County Attorney's Office. Prejean's response was adversarial, in bad faith, and non-compliant with 28 C.F.R. §§ 35.150(a)(3) and 35.164. No accommodations were provided.

## CAUSE OF ACTION
### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

53. Plaintiff re-alleges and fully incorporates by reference all preceding paragraphs.

54. Plaintiff fully incorporates by reference 42 U.S.C. §§ 12101–12213 and 28 C.F.R. pt. 35.

55. Defendant Williamson County discriminates against, segregates, and systematically excludes qualified individuals with disabilities in the provision or

operation of Public Activities.[27] Defendant Williamson County subjects qualified individuals to discrimination, on the basis of disability, in violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132, by, including but not limited to:

(1) limiting qualified individuals with disabilities' enjoyment of state and federal rights (e.g. constitutional rights), and other rights, privileges, advantages, and opportunities enjoyed by others through Public Activities;

(2) failing to make reasonable modifications to policies, practices, or procedures, when those modifications are necessary to avoid discrimination on the basis of disability;

(3) denying individuals with disabilities the opportunity to participate in or benefit from Public Activities;

(4) affording individuals with disabilities an opportunity to participate in or benefit from Public Activities that is not equal to that afforded to others;

(5) failing to operate Public Activities so that they are readily accessible to, and usable by, persons with disabilities;

(6) failing to take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others;

(7) failing to administer Public Activities in the most integrated setting appropriate to the needs of persons with disabilities;

---

[27] *Public Activities* are the public services, programs, and activities of the Williamson County court system.

Complaint                                                                                                    16 of 19

(8) providing individuals with disabilities Public Activities that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(9) providing different or separate Public Activities to individuals with disabilities or to any class of individuals with disabilities, when those different or separate Public Activities are not necessary to provide qualified individuals with disabilities Public Activities that are as effective as those provided to others;

(10) directly or through arrangement, utilizing criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

(11) imposing or applying eligibility or qualification criteria that screens out or tends to screen out individuals with disabilities or any class of individuals with disabilities from fully and equally enjoying any Public Activity;

(12) with respect to individuals with disabilities, utilizing criteria or methods of administration that have the effect of defeating or substantially impairing accomplishment of the objectives of a public entity's Public Activities;

(13) aiding or perpetuating discriminating against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any Public Activity.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court:

(a) Enter a judgement in favor of Plaintiff and declare that Defendant has violated Title II of the ADA, 42 U.S.C. §§ 12131–012134, and the U.S. Department of Justice's Title II implementing regulations, 28 C.F.R. pt. 35.

(b) Enjoin Defendant, its agents and successors in office, and all persons acting in concert with Defendant from failing to or refusing to comply with Title II and its implementing regulations;

(c) Order Defendant, its agents and successors in office, and all persons acting in concert with Defendant, to promptly to develop a plan, within 15 days of this Court's order, to remedy all demonstrated violations of Title II and its implementing regulations;

(d) Order Defendant submit to monitoring by Plaintiff and the U.S. Department of Justice, including but not limited to, submitting written reports summarizing the actions taken to comply with Title II and its implementing regulations.

(e) Award compensatory damages to Plaintiff and any other aggrieved persons in an appropriate amount for injuries suffered from Defendant's failure to comply with Title II and its implementing regulations;

(f) Award Plaintiff their costs and reasonable attorney's fees incurred in this action; and

(g) Grant such other and further relief as the interests of justice require.

DATED: August 18, 2017.

Respectfully submitted,

/s/ John Doe
P.O. Box 170174
Austin, TX 78717